THE OVERSEER OF THE POOR OF THE TOWN OF CLINTON
v. THE OVERSEER OF THE POOR OF THE TOWNSHIP
OF CLINTON.

1. When the birthplace of a pauper is severed from a township, and
included within the corporate limits of a town, a liability for support
passes to the town along with the birthplace.
2. The township is not estopped from testing the liability of the town
for such support, by the fact that its officers, for a long period of time
after such transfer of territory, continued to support the pauper; nor
does such conduct raise a conclusive presumption that, at the time of
the transfer, a contract was entered into between the town and town-
ship by which the latter was to continue the support.

On *certiorari.*

Argued at June Term, 1893, before Justices VAN SYCKEL
and REED.

For the prosecutor, *William H. Johnson* and *H. Burdett
Herr.*

For the defendant, *Paul A. Queen.*

The opinion of the court was delivered by

REED, J.   This writ brings up a judgment of the Court
of Quarter Sessions of Hunterdon county, affirming an order
of removal of one Sarah Ann Rodenburgh, as a poor person,
to the town of Clinton as the place of her last legal settle-
ment.   The admitted facts are these: In 1865 the town of
Clinton was incorporated, and its territory comprised portions
of the townships of Clinton, Union and Franklin.   At that
time the said pauper was settled in Clinton township, under
an order made in 1854, removing her from Franklin town-
ship to Clinton township.   She was born in Clinton township,
and her place of birth was within that portion of its territory
which was included in the town of Clinton upon its incorpo-

ration in 1865. Since the removal of the pauper from Franklin to Clinton township, the latter township has continuously maintained her up to the time of the order appealed from in this case.

It also is a fact that a person of the same name as the grandfather of the pauper, purchased land within the limits of High Bridge township, in 1804, and sold it in 1812. The expressed consideration for the purchase was twenty-eight federal silver dollars, and for the sale $220. Peter Rodenburgh, the grandfather of the pauper, died in High Bridge township about 1834. Upon these facts the court is asked to reverse the judgment of the court below, holding that the settlement of Sarah Ann Rodenburgh is in the town of Clinton.

It is not seriously contended that, at the time of the incorporation of the town of Clinton, the pauper was not chargeable to the township of Clinton. It is entirely settled that the place of birth is *prima facie* the place of settlement. *Shrewsbury* v. *Holmdel*, 13 *Vroom* 373 ; *Madison* v. *Monroe*, *Id.* 493.

This presumption may be overcome by evidence of another settlement, actual or derivative. For an instance, upon proof of a settlement of the father of the pauper at a place elsewhere than the place of the pauper's birth, the child's settlement will follow that of the father. *Shrewsbury* v. *Holmdel*, *supra.*

The only fact relied upon in any degree to show a settlement of this pauper to be elsewhere than at the place of her birth, is that her grandfather owned property at one time, and resided at some period of time, in the township of High Bridge. This was a long time anterior to the date of the order by which she was removed from Franklin to Clinton township. The rule in England is that such an order is a judgment *in rem* fixing the *status* of a person, and so estops all the world from questioning it. *Rex* v. *Cirencester, Burr. Sett. Cas.* 18 ; *Rex* v. *Bentley, Id.* 426 ; *Regina* v. *Hartington*, 4 *El. & B.* 780 ; *West Buffalo* v. *Walker*, 8 *Barr* 177.

And the same force was accorded to an order of removal in the case of *South Brunswick* v. *Cranbury*, 24 *Vroom* 126.

But the settlement of the pauper in Clinton township need not rest upon the order unappealed from, which was made in 1854. There is nothing in the fact of the grandfather's ownership of property and residence in High Bridge township which would fix his legal settlement there. The statute undoubtedly intends that the period of residence and of ownership of property shall be simultaneous. There is nothing to show that he owned the requisite amount of property and resided, during the period of such ownership, for one year in the township of High Bridge.

Besides this, it is to be kept in mind that the Court of Quarter Sessions were the judges of the probative force of the only evidence of value of the land owned by the grandfather. The evidence was that the property was bought for much less than $130, and sold eight years later for more. Whether it was worth this sum for the whole of any one year, or whether its selling price was affected by a sudden rise in value or by a peculiar condition of affairs existing at that time, was a matter for the exclusive consideration of the court below.

It must therefore be conceded that, in 1865, the legal settlement of the pauper was in Clinton. township, and arose from the fact of her birth within the limits of said township. This being so, then the moment the place of her birth was severed from Clinton township and transferred to Clinton town, the liability for her support was also transferred to the new town. *Overseer of the Township of Bethlehem* v. *Overseer of the Township of Alexandria*, 3 *Vroom* 66.

The counsel for the prosecutor urges that the township of Clinton is estopped from taking advantage of this well-settled legal result. This estoppel is claimed to spring out of the conduct of the authorities of the township of Clinton in maintaining this pauper from the time of the creation of the town of Clinton until a date quite recent.

Now, it is quite clear that evidence of this course of conduct, on the part of Clinton township, was entirely competent as an

admission. It is equally certain that, if the evidence had left the place of the pauper's birth at all uncertain, this admission would have possessed great probative force in settling the facts adversely to the township of Clinton. Regarded, however, simply in the light of an admission, its potency would have been exclusively a question for the Court of Quarter Sessions. No power has been conferred upon this court to review the finding of facts in this class of cases. *Tewksbury* v. *Branchburg*, 15 *Vroom* 595.

It is perceived, therefore, that it is necessary to regard this course of conduct as something which absolutely concluded the township. Now, it is clear that this conduct does not amount to an estoppel. The conduct relied upon is the payment of money by the township for the support of the pauper. But this, instead of putting the town in a worse plight, was to its advantage. The loss of evidential facts, which it is claimed may have occurred by the lapse of this long period of time, is not the result of these payments, but is the result of a delay in testing the question of the liability of the respective municipalities. In respect of this delay, it is sufficient to say that there exists no statute of limitations imposing a temporal limitation upon the institution of proceedings of this kind.

But it is argued that, from the conduct of the township officers, it will be presumed that an agreement was entered into at the time of the severance of the territory from the township, by the terms of which contract the burden of supporting this pauper was assumed by the township. It is at once apparent, however, that this conduct must raise a conclusive presumption of such a contract to entitle it to any notice in this court. I can perceive no ground on which such a presumption can rest.

There is, it is true, a class of presumptions resting upon the beneficial enjoyment of property rights, which rights have their origin in grants. In these cases a long period of beneficial enjoyment will raise a presumption of a grant.

There are cases also where an immunity resting upon contract, by a long period of disuse, will raise a presumption of the rescission of the contract.

But the settlement of a pauper is not a matter resting upon contract, but upon statutory provisions, fixing a personal *status*. The liability for support flows solely from the *status* of the pauper.

Nor is there anything whatever in section 20 of the act of 1865 (*Pamph. L., p.* 787) which provides for any contract between the old and new corporations in respect to any liability whatever. I conclude, therefore, that no estoppel exists. Indeed, the very matter now mooted seems to have been settled in the case of *Stillwater* v. *Green*, 4 *Halst.* 59.

Judgment affirmed.